IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SUSAN ANN SIMSHAW DUNAGAN,                     No.  3:17-cv-00358-HZ

               Plaintiff,                              OPINION & ORDER

     v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

               Defendant.


Merrill Schneider
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293

       Attorneys for Plaintiff


Janice E. Herbert
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Sarah Moum
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Susan Ann Simshaw Dunagan brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

     Plaintiff applied for SSI on January 11, 2013. Tr. 21, 76.[1] Her applications were denied initially and on reconsideration. Tr. 93–96, 100–02. On June 16, 2015, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 32. On July 31, 2015, the ALJ found Plaintiff not disabled. Tr. 26. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on "Ddd, chronic pain, severe hypertension, history of uterine cancer, joint/heart problems, and depression with anxiety." Tr. 162. She was 62 at the time of the administrative hearing. Tr. 38. Plaintiff has a high school education and past relevant work experience as a bingo hall cashier and attendant. Tr. 39–40, 163–64.

///

///

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her application date of January 11, 2013. Tr. 19. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "cardiomyopathy, status post hysterectomy and uterine cancer, hypertension, rotator cuff strain and osteopenia." Tr. 19. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 22. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff] can lift and carry up to ten pounds frequently and 20 pounds occasionally. She can stand and/or walk approximately six hours out of eight in an eight-hour workday, with normal breaks. She can occasionally climb ramps or stairs. She can never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She should not work around workplace hazards such as unprotected heights and dangerous machinery. She can only occasionally reach bilaterally."

Tr. 21. Taking into consideration these limitations, the ALJ concluded at step four that Plaintiff is capable of performing her past relevant work as a bingo hall cashier and attendant. Tr. 27. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 27.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by (1) improperly finding some of Plaintiff's impairments nonsevere at step two; (2) improperly discrediting Plaintiff's testimony; (3) improperly evaluating the lay witness testimony of Plaintiff's partner; and (4) failing to conduct an adequate analysis at steps four and five. Pl.'s Opening Br. 5, ECF 14. Because the ALJ erred in her analysis at step four, the Court reverses the ALJ's decision and remands this case for further proceedings.

### I.    Step-Two Analysis

Plaintiff alleges that the ALJ erred in finding some of her impairments nonsevere at step two. Pl.'s Op. Br. 8. At step two, the ALJ determines whether the claimant's medically

determinable impairment or combination of impairments is severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step two is a *de minimis* screening device used to dispose of groundless claims. *Bowen,* 482 U.S. at 153–54. An impairment is severe if it "significantly limits the claimant's ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not severe if it is merely a 'slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting SSR 96-3p). If the ALJ identifies at least one severe impairment, the analysis proceeds, and the ALJ is to take into account all of the claimant's limitations, regardless of whether they are severe or nonsevere. *Howard ex. rel Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing 20 C.F.R. § 416.923. Therefore, even if the ALJ fails to identify a severe impairment at step two, the error is harmless so long as he considers all of the claimant's impairments at subsequent steps of the analysis. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Graybeal v. Astrue*, No. 3:10–cv–06387–PK, 2011 WL 6019434, at *6 (D.Or. Nov. 2, 2011) ("An ALJ's erroneous finding that an impairment is nonsevere constitutes harmless error, however, if the ALJ resolves step two in the claimant's favor and properly considers limitations imposed by the impairment at other steps of the sequential process.")

At step two, the ALJ found that Plaintiff has severe impairments of cardiomyopathy, status post hysterectomy and uterine cancer, hypertension, rotator cuff strain, and osteopenia. Tr. 19. In her analysis, she found that Plaintiff's other complaints—including eye conditions, chronic obstructive pulmonary disease (COPD), fibromyalgia, pain disorder, and depression— were nonsevere as they caused Plaintiff no more than minimal functional limitations. Tr. 19–21. Plaintiff argues that the ALJ erred in not finding the following impairments to be severe: (1)

COPD, with chronic shortness of breath; (2) depression/dysthymic disorder, with low energy level, difficulty concentrating, and periods of serious depression symptoms; (3) degeneration of the acromioclavicular joint in her left shoulder, with bilateral muscle atrophy, tenderness on palpation, decreased range of motion, and pain with movement; (4) arthritis, with chronic pain, particularly in her back, hips, and shoulders; (5) congestive heart failure; and (6) degenerative disc disease. Pl.'s Op. Br. 7–8.

The ALJ found that Plaintiff's COPD and depression were nonsevere because they have "no more than a minimal effect on [Plaintiff's] ability to do basic work activities." *Webb,* 433 F.3d at 686. The record supports the ALJ's finding. Plaintiff was once diagnosed with COPD, but the record shows that pulmonary function tests in November 2010 and May 2013 revealed normal results. Tr. 369–70 (2010 function test indicating "normal" results), 393 (2013 chart note indicating function test results were normal). She was accordingly advised by her physician that she did not have COPD. Tr. 393. Using the criteria set out in SSR 96–8, the ALJ found that Plaintiff's depression is nonsevere as it does not limit her activities of daily living and social functioning, caused no episodes of decompensation, and causes mild limitations in concentration, persistence, and pace. Tr. 21. The ALJ cited evidence in the record that, despite some early reports of depressive symptoms, Plaintiff's depression was well-controlled with medication. Tr. 50 (testifying that her depression is "doing okay" and that she is afraid to go off the medication for it), 388 (noting ongoing depression but with well-controlled symptoms). The ALJ also cited Plaintiff's failure to seek mental health treatment along with the findings of examinations of Plaintiff, which showed a history of depression causing a mild limitation in her concentration, persistence, and pace. Tr. 20–21, 85. The ALJ therefore did not err in finding that Plaintiff's COPD and depression are nonsevere conditions.

The ALJ did not explicitly analyze Plaintiff's other conditions at step two. However, any error was harmless because the record does not suggest that these conditions cause more than minimal functional limitations and the ALJ took these limitations into account later in her analysis. First, the medical record does not suggest that Plaintiff's heart failure, hip pain, and degenerative disc disease result in any functional limitations. While the record indicates that Plaintiff was previously diagnosed with chronic heart failure, it also shows that she presented with no symptoms of uncompensated heart failure, that her exercise capacity was not limited by her heart, and that she admitted that she has no cardiovascular symptoms and was doing fine. *Compare* Tr. 442 *with* Tr. 269, 384, 374. While an examining physician indicated that she likely had degenerative disc disease, he also found that it was not a limiting condition. Tr. 377. And an X-ray of Plaintiff's hip and pelvis presented negative findings. Tr. 364. Notably, Plaintiff also fails to cite in her briefing any specific additional limitations caused by these conditions. Pl.'s Op. Br. 8 (stating only "there is no doubt these impairments significantly limit the claimant's ability to perform basic work activities.").

Second, the ALJ considered these impairments and their limitations later in her analysis. Plaintiff claims that her arthritis causes chronic low back, hip, and shoulder pain and that her shoulder muscle atrophy results in tenderness, decreased range of motion, and pain with movement. *Id.* She also generally alleges that her back and heart conditions are limiting. *Id.* The ALJ discussed these conditions and attendant limitations in formulating Plaintiff's RFC. Tr. 24 (discussing Plaintiff's heart conditions including her diagnosis of congestive heart failure), 25 (discussing Plaintiff's pain and limitations from her shoulder and back). Further, the RFC takes into account Plaintiff's limitations from her shoulder conditions, tr. 22, and the ALJ properly discredited much of Plaintiff's subject symptom testimony regarding limitations stemming from

these medical conditions, tr. 23; *see also infra* Section II. As these conditions were ultimately

"inconsequential to the ultimate nondisability determination," any error was harmless. *Molina v.*

*Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012).

## II.     Credibility Determination

Plaintiff argues that the ALJ did not provide clear or convincing reasons for discrediting

Plaintiff's testimony. In assessing a claimant's testimony regarding subjective pain or the

intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929.

The first stage is a threshold test in which the claimant must present objective medical evidence

of an underlying impairment that could reasonably be expected to produce the symptoms alleged.

*Molina*, 674 F.3d at 1112; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the

second stage of this analysis, absent affirmative evidence of malingering, the ALJ must provide

clear and convincing reasons for discrediting the claimant's testimony regarding the severity of

the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008);

*Lingenfelter*, 504 F.3d at 1036.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to

conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin,*

763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir.

2015). Factors the ALJ may consider when making such determinations include the objective

medical evidence, the claimant's treatment history, the claimant's daily activities, and

inconsistencies in the testimony. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039. In

addition, conflicts between a claimant's testimony and the objective medical evidence in the

record can undermine a claimant's credibility. *Morgan,* 169 F.3d 595, 600 (9th Cir. 1999).

When the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan,* 169 F.3d at 599.

Plaintiff testified that she has mid-back pain, shoulder pain and weakness, and leg weakness. Tr. 47. She also noted problems with her memory beginning when she had cancer. Tr. 52. She testified that she will misplace things, forget phone calls, and forget why she entered a room. Tr. 52. Plaintiff also indicated she had a history of headaches and depression. Tr. 47, 50. Plaintiff takes medication for her blood pressure, depression, and back pain. Tr. 45–46. She testified that the medication does not cause any side effects except gastrointestinal upset about an hour after she takes them. Tr. 46. She said she "wouldn't mind going to work," but she would need to stop and rest constantly. Tr. 45. She also said that she would probably try to work for her previous employer at the bingo hall if they had not disbanded. Tr. 48.

At the time of the hearing, Plaintiff lived with her partner, her granddaughter, and her granddaughter's husband and two children. Tr. 38. Plaintiff said that on a typical day she wakes up at 8:00 AM and, once the kids are awake, tries to clean the house. Tr. 41. She is responsible for laundry and "general pickup," but folding takes a long time and she cannot "stay on any one project for very long" because she has to lie down to ease her back pain. Tr. 41–42. She also helps take care of her grandson's dog. Tr. 44. She does not vacuum, and her granddaughter takes care of the kitchen. Tr. 42. Her family also helps her by cleaning up after themselves and picking up the yard. Tr. 51. She sometimes goes with her partner to the grocery store, and it takes them

about an hour to grocery shop. Tr. 47. She rarely drives anymore "because it hurts [her] arms to turn the steering wheel." Tr. 39.

Plaintiff testified that she keeps busy, but it takes her a long time to do things because she needs to take breaks to rest. Tr. 45, 51. For example, she stated that when cutting her grandson's hair she has to take three or four ten or twenty minute breaks. Tr. 52. She also cannot walk for long because of weakness in her legs. Tr. 47. She said that she can walk about a block in her neighborhood and around the grocery store. Tr. 53. Plaintiff likes to spend her weekends going "garage sale-ing" for a few hours on Saturdays and Sundays. Tr. 43–44. She will read and watch TV sporadically and uses the computer to play games. Tr. 42. Plaintiff can only use the computer for about a half an hour before needing to rest. Tr. 51. She also spends time with her family focusing on emergency preparedness by stocking up on food and supplies. Tr. 43–44.

The ALJ cites three reasons for finding Plaintiff not credible as to the severity of her symptoms: (1) Plaintiff's activities of daily living, (2) Plaintiff's work history and willingness to work, and (3) inconsistencies between Plaintiff's testimony and the medical record. Tr. 23–24. Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons for rejecting her testimony. This Court disagrees.

### a. Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their

limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping ... does not in any way detract from his credibility," *Webb,* 433 F.3d at 688 (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ found that Plaintiff's daily activities "are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." Tr. 23. She noted that Plaintiff is able to tend to her personal needs, do some household chores, care for her grandson's dog, cut her grandson's hair, spend time with her grandkids, and attend garage sales every weekend. Tr. 23. The ALJ also emphasized that Plaintiff's ability to engage in hobbies, manage personal finances, and drive indicates that her cognition and memory are not as limited as she alleges. Tr. 23. These activities, according to the ALJ, are inconsistent with her complaints of disabling symptoms and limitations.

The ALJ's argument is unconvincing. Here, the Plaintiff repeatedly testified that she is limited in her ability to carry out all of these activities. For example, Plaintiff stated that she had to take three or four ten to twenty minute breaks while cutting her grandson's hair. Tr. 52. Laundry can take her days at a time because of her shoulder pain. Tr. 173. Her family helps with many of her household chores. Tr. 42 (noting that her granddaughter takes care of the kitchen), 52 (noting that her family helps clean up after themselves). Her partner sometimes grocery shops without her. Tr. 47. This is consistent with her testimony that she needs to lie down because of her back pain, take frequent breaks, is limited to walking about the distance of a grocery store,

and is limited in the use of her arms.  Tr. 51–52. Plaintiff's difficulty with her memory—specifically, misplacing and forgetting things—is not inconsistent with engaging in hobbies, managing personal finances, and driving. Plaintiff also indicated that she needs verbal reminders to take medication and that her ability to engage in her hobbies is limited because of difficulties with focus and comprehension. Tr. 172, 174. The most persuasive piece of testimony the ALJ points to is Plaintiff's ability to spend a few hours each weekend going to garage sales. However, Plaintiff provided very little information—and the ALJ did not ask about—what limitations Plaintiff has in carrying out this activity. Presumably, like her other activities, Plaintiff has to take frequent breaks to rest. Regardless, one activity is insufficient under the law of this circuit to constitute a clear and convincing reason for discounting Plaintiff's credibility. *Vertigan*, 260 F.3d at 1050 ("One does not need to be 'utterly incapacitated' in order to be disabled.").

### b.  Work History

The ALJ may consider work that a claimant engaged in—regardless of whether that work amounted to substantial gainful activity—in making his disability determination. SSR 96-7 (prior work and efforts to work are factors used to evaluate a claimant's credibility); *see also* 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). The ALJ may also discount a claimant's credibility where the alleged impairment is not the reason that the claimant stopped working. *See Tommasetti*, 533 F.3d at 1040 (affirming credibility decision where the claimant testified his diabetes was not disabling, was controlled by medication, and was not the reason he stopped working); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (Plaintiff's pain allegations were not credible where the plaintiff reported at the hearing and to his doctors that he left the job because he was laid off, not because he was injured.). And the ALJ may

discount a claimant's credibility where he has continued to search for work becuase holding one's self out as capable of work "cast[s] doubt on a claim of disability." *See Ghanim,* 763 F.3d at 1165.

Here, the ALJ discredited Plaintiff's testimony because she testified "she would still have liked to work at her job at the bingo hall if the company had not disbanded, and she has recently contacted her former employer about another job." Tr. 23, 49. Plaintiff's job as a bingo cashier and attendant required her to work two fifteen-hour days in a week. Tr. 48–49. While she testified that she was not sure if she could do the work, she also testified that she had attempted to contact her former employer to try again. Tr. 49. This testimony is consistent with Plaintiff's application, where she stated she stopped working because the company disbanded—not because of her medical conditions. Tr. 163 (noting that she stopped working "because of other reasons" and explained the "company went out of business."). The ALJ appropriately found that these statements cast doubt on Plaintiff's credibility. By contacting her former employer, she "[held] herself out as capable of work." *Ghanim*, 763 F.3d at 1165. Further, Plaintiff repeatedly indicated that she stopped working for reasons unrelated to her medical conditions. *Bruton*, 268 F.3d at 828. This reason is, therefore, both clear and convincing.

### c. Inconsistency with the Medical Record

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding where the plaintiff's testimony of

weight fluctuation was inconsistent with the medical record). The ALJ may also take into account the effectiveness of any medication. *See Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995) ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication."). And under certain circumstances, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson,* 359 F.3d at 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on objective, physical basis by claimant's treating physician."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). However, this may not be the ALJ's sole reason for discounting a claimant's testimony: "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

The ALJ found that there were "significant inconsistencies between the claimant's allegations of physical conditions . . . and the objective medical findings." Tr. 24. Specifically, she found that (1) "the record shows that she has not presented with consistent problems or complaints," (2) her symptoms are disproportional to the medical evidence, and (3) the treatment for her impairments has been effective in controlling her symptoms. Tr. 24. The ALJ then went on to provide a detailed list of these inconsistencies with regard to Plaintiff's uterine cancer, heart conditions, hypertension, and pain complaints. The ALJ also noted that there was no objective evidence of Plaintiff's alleged memory issues. Tr. 23.

The record does not support the ALJ's first argument that Plaintiff has been inconsistent in her complaints, particularly with regard to her physical pain. At various points throughout the

record, Plaintiff reported that she has difficulty with pain in her back and shoulder. For example, in April of 2013, Plaintiff reported having hip and shoulder pain. Tr. 394. In October of 2013, Plaintiff noted that she had pain when walking too far. Tr. 384. Similarly, she reported shoulder pain in January 2014 and shoulder and back pain in August of 2014. Tr. 449, 453. The ALJ cites three chart notes in support of her argument that Plaintiff's complaints have been inconsistent. First, the ALJ cites chart notes from an eye doctor that show an absence of physical pain complaints. Tr. 24 (citing tr. 401). Second, the ALJ cites a note from July 2013 where plaintiff indicates that her pain is not an issue. Tr. 288. Finally, the ALJ notes that in March of 2015, Plaintiff did not have any tenderness in her low back or muscle spasm and her range of motion was normal. Tr. 446. But a few instances in which Plaintiff failed to report pain—in a record that otherwise reflects years of consistent pain symptoms—does not convincingly suggest Plaintiff has been inconsistent in her symptom testimony.

However, the medical evidence often shows mild or normal findings despite Plaintiff's complaints. Tr. 25. For example, a 2011 X-ray of her shoulder showed mild osteoarthritic changes at the acromioclavicular joint, and a 2011 X-ray of her hip and pelvis was normal. Tr. 364–65. Pulmonary function tests for COPD were also normal. Tr. 369–70, 393. As examining physician Dr. Erik Maki noted, no imaging had ever been taken of Plaintiff's lumbar spine. Tr. 377. With regard to Plaintiff's cognition and memory limitations, there is little evidence—other than Plaintiff's subjective symptom testimony—of ongoing issues. Psychodiagnostic examiner Dr. Ronald Duvall found that she had a "good biographical memory" and that her working memory and concentration were solidly normal based on testing. Tr. 382. She was able to recall seven digits forward and backward, which Dr. Duvall noted contradicts Plaintiff's self-report of being unable to remember a telephone number. Tr. 381.

Finally, the record also suggests that treatment has been fairly effective over time in controlling her pain symptoms, managing her depression, and treating her other conditions. At the hearing Plaintiff testified that her depression and pain medications were effective in managing her symptoms. Tr. 46, 50. She similarly noted to her medical providers at various points that her medication was effective in controlling her symptoms. Tr. 388 (2013 note indicating both depression and pain symptoms were well controlled), 446 (2015 chart note indicating that "she finds that [her medication] has helped considerably in the management of her pain" and is "feeling quite well and has no major complaints."). Her blood pressure normalized with the use of medication. Tr. 275. And the record shows that her treatment for uterine cancer was effective and that she has been generally "doing well" post treatment. Tr. 281, 285, 288, 417. As the ALJ's overall finding is generally supported by the record, this constitutes a clear and convincing reason for discrediting Plaintiff's testimony.

### III.    Lay Witness Testimony

Plaintiff also argues that the ALJ erred in assigning partial weight to the written statements of Plaintiff's partner, Michael Dunagan.  "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114.  The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. The ALJ is not required, however, "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114.   If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness.  *Id*.; *see also Valentine*, 574 F.3d at 694 (affirming the ALJ's decision to reject lay witness testimony "for the same reasons" she discounted the claimant's

testimony where the testimony of the witness and claimant were similar and claimant's complaints were discounted for clear and convincing reasons).

The ALJ gave Mr. Dunagan's statements partial weight for two reasons. First, she found that "there is little objective evidence to support his reported functional limitations." Tr. 25–26. Second, she found that while his statements were credible to the extent that they were consistent with Plaintiff's allegations, "there are several reasons to question the credibility of the claimant." Tr. 26. "For the same reasons" the ALJ discounted Mr. Dunagan's statements regarding Plaintiff's symptoms and limitations. Tr. 26.

In this Circuit, inconsistency with the medical evidence is a considered a germane reason for discounting the testimony of lay witnesses. *Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005). However, lack of support or corroboration by the medical record is not a germane reason to discount lay witness testimony. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ discredit her lay testimony as not supported by the medical evidence in the record."). Here, the ALJ did not find that the testimony *conflicted* with the medical evidence. Rather, she found that it was unsupported by the medical record. This is not a germane reason to discount Mr. Dunagan's testimony. *See, e.g., Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir.1996) ("The rejection of the testimony of [the claimant's] family members because [the claimant's] medical records did not corroborate her fatigue and pain violates SSR 88–13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by her medical records.").

However, the ALJ may discount lay witness testimony for the same reasons he has discounted a claimant's testimony when their testimony is similar and the ALJ has validly discounted the claimant's testimony. *Valentine,* 574 F.3d at 694. Here, the ALJ found Mr.

Dunagan's statements were consistent with the claimant's allegations and rejected Mr. Dunagan's testimony "for the same reasons" she discounted Plaintiff's testimony. Tr. 26. The record supports this finding. Mr. Dunagan's statements are substantially similar to those of Plaintiff. For example, both Mr. Dunagan and Plaintiff indicated that she has limited use of her arms, which can cause problems with personal care. Tr. 172, 193. Both stated that she needed reminders to take medication, does not prepare meals, does some laundry, and misplaces things. Tr. 172–173, 194–195. Both also noted the same hobbies, including watching TV and using the computer. Tr. 174, 197. Plaintiff and Mr. Dunagan also indicated she is limited to walking about a block and can have a trouble with following instructions at times. Tr. 175, 197. At times, even, Mr. Dunagan's statements suggest that Plaintiff's limitations are less severe than she alleges. For example, he indicated she often plays with their grandkids, sometimes shops with a friend, and spends more—not less—time using her computer and watching TV. Tr. 196. He also never indicated that Plaintiff needs to stop and rest while carrying out an activity. Because the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony, *see supra* Section II, and their testimony is substantially similar, this constitutes a germane reason to discount Mr. Dunagan's statements. *see Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the plaintiff's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the witness's] testimony."). Accordingly, the ALJ did not err in giving Mr. Dunagan's testimony partial weight.

## IV.    Step-Four Analysis

Plaintiff argues that the ALJ failed to conduct an adequate analysis at steps four and five because the Vocational Expert (VE) relied on an incomplete hypothetical. Pl.'s. Op. Br 12. The

residual functional capacity (RFC) is the most a person can do, despite his physical or mental limitations. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence, including the claimant's testimony." *Id.*; SSR 96-8p. At step four, the ALJ determines whether the claimant can perform past relevant work given his RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work as it was actually performed *or* as it is generally performed in the national economy, the claimant is not-disabled within the meaning of the Act, thus concluding the sequential evaluation process. *See, e.g.*, *Tommasetti,* 533 F.3d at 1042–43; SSR 82-61. The ALJ may use two different sources of information to define how a claimant's past relevant work is actually performed: "a properly completed vocational report . . . and the claimant's own testimony." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (citing SSR 82-61, SSR 82-41).

At the hearing, a VE testified that Plaintiff's past relevant work as a bingo cashier and attendant was "almost" a composite job consisting of a "bingo hall cashier" and "game attendant." Tr. 27, 54. In questioning the VE about whether Plaintiff could continue to engage in her past relevant work, the ALJ posed a hypothetical to the VE that limited Plaintiff to "occasional overhead bilateral reaching." Tr. 55. The VE testified that, with this limitation, Plaintiff could perform her past relevant work. Tr. 55. In her decision, the ALJ found that the claimant had the functional capacity to "perform [the work as] it was actually performed." Tr. 27. In making this finding, the ALJ cited to Plaintiff's testimony, her work activity report, and the testimony of the VE. Tr. 27. Notably, the ALJ's RFC limits plaintiff to "occasional bilateral reaching" rather than "occasional *overhead* bilateral reaching" as posed to the VE at the hearing. *Compare* Tr. 22 *with* Tr. 55.

The Commissioner admits that there is a discrepancy between the hypothetical posed to the VE and the RFC used in the ALJ's decision. Def.'s Resp. Br. 12, ECF 15 ("This is correct; the hypotheticals posed to the vocational expert pertained to *overhead* reaching bilaterally, rather than all reaching as stated in the RFC."). However, the Commissioner contends that this error was harmless as the ALJ found that Plaintiff could perform her past work as actually performed, which only required occasional reaching. *Id.*

This Court disagrees. As Plaintiff notes in her reply, the information that the ALJ relied on in making her assessment of Plaintiff's ability to perform her job as actually performed was incomplete. Pl.'s Reply Br. 6. A portion of the work history report asks the claimant how much time she spent in previous jobs doing various activities, including reaching. Tr. 178–191 ("Work History Report" or form SSA 3369). Next to each activity, a space is left for the claimant to indicate how many hours per day she spent doing that activity. *Id.* In her work history report, Plaintiff indicated that the cashier portion of her position required two hours of reaching per day. Tr. 180. This constitutes "occasional" reaching according to the Social Security Administration. POMS DI 25001.001 (noting occasionally means occurring "up to one third of the time"). But Plaintiff did not indicate how many hours a day she would spend reaching in the sales or "game attendant" part of the job as she left this space blank. Tr. 181; Tr. 54 (noting that the "sales end" of the job is classified as a "game attendant."). The ALJ cannot reasonably conclude that this blank answer means Plaintiff spent no time reaching each day in this job, particularly as Plaintiff did respond with "zero hours" elsewhere in the work history report. *See* Tr. 180 (noting she spent "0" hours climbing and crawling in the cashier position).

Because the Plaintiff's testimony was incomplete, the ALJ had to rely on the testimony of the VE to determine whether Plaintiff could engage in her past relevant work. SSR 82-61 (noting

that for composite jobs "where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a . . . vocational expert."). The ALJ's RFC limits Plaintiff to occasional bilateral reaching. Tr. 22. The hypothetical posed to the VE, by contrast, only limited Plaintiff to occasional *overhead* bilateral reaching. Tr. 55. Because the hypothetical did not include all of Plaintiff's limitations, the VE's answer is of no evidentiary value. *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1984). Accordingly, ALJ erred in finding that Plaintiff could perform her past relevant work.

## V.     Remand for Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r of Soc. Sec. Admin*., 635 F.3d 1135, 1138–39 (9th Cir. 2011). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1101 (9th Cir. 2014).

Plaintiff argues that a remand for an award of benefits is appropriate in this case. Pl.'s Op. Br. 14. Specifically, she argues that, at step four, Plaintiff would be unable to engage in her past relevant work if limited to occasional bilateral reaching because both occupations require frequent reaching. *Id.* at 13. At step five, because the VE testified that Plaintiff has no transferrable works skills and Plaintiff was sixty years old at the time of filing with a high school

education and limited to a light RFC, Plaintiff argues she would be found disabled under Grid Rule 202.06. *Id.* at 13–14.

Here, however, it is unclear whether Plaintiff could still engage in her past relevant work if limited to occasional bilateral reaching. Plaintiff asserts that both jobs require frequent reaching in the Dictionary of Occupational Titles. *Id.;* Pl.'s Reply Br. 5. However, composite jobs—such as Plaintiff's past relevant work here—are evaluated under the facts of the particular case. SSR 82-61. The Court, therefore, cannot determine on this record alone whether Plaintiff could engage in her past work given her limitations, and the case must be remanded to the ALJ for further proceedings.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

Dated this _____ day of February, 2018

MARCO A. HERNÁNDEZ
United States District Judge